UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RELIASTAR LIFE INSURANCE COMPANY,

        Interpleader Plaintiff,

    v.                                          Case No. 09-C-1195

JAN KEDDELL; C.R.K., A.A.K. (minors), and
SARAH KALMON, in her capacity as guardian,

        Defendants.

---

**DECISION AND ORDER**

---

        Through his employer, Kelly Kalmon obtained a life insurance policy through ReliaStar Life Insurance Company, the interpleader Plaintiff in this action. At the time of his death on September 16, 2009, Kalmon was eligible for $39,000 in basic life insurance benefits plus $50,000 in supplemental benefits he had applied for. ReliaStar now asks this Court to determine whether the benefits should be paid to the named beneficiary, Jan Keddell (Kalmon's girlfriend), or to his minor children from his previous marriage to Sarah Kalmon. Sarah Kalmon has moved for summary judgment.

        Keddell believes the case is simple. Because the policy was obtained through Kalmon's employer, it is subject to the Employee Retirement Income Security Act of 1974, known as ERISA. 29 U.S.C. § 1001 *et seq.* ERISA preempts any state laws that would interfere with the payment of benefits as set forth in the plan documents, and so Jan Keddell, the beneficiary Kalmon named when he took out the policy, is entitled to receive the benefits in full.

Sarah Kalmon, on behalf of the two minor children she had with Kelly Kalmon, argues otherwise. She bases her argument on the fact that upon their divorce she and Mr. Kalmon entered into a marital settlement agreement. As is common, the agreement required both parties to maintain their then-existing life insurance naming their children as beneficiaries. At the time, however, the only insurance in effect was a policy owned by Sarah Kalmon that she obtained through her employer. The policy covered her for $90,000 and her husband for $40,000. Several months after the divorce, Mr. Kalmon obtained his own policy – the ReliaStar policy at issue here – and named Jan Keddell the beneficiary rather than his children. Sarah Kalmon argues that the pre-existing obligation upon Mr. Kalmon to name his children as beneficiaries entitles them to obtain the life insurance proceeds through a constructive trust.

Unfortunately for the children, the law governing such disputes is not in their favor. In *Melton v. Melton,* a divorce agreement required the parties to maintain their life insurance and keep their children as beneficiaries. 324 F.3d 941, 943 (7th Cir. 2003). When Mr. Melton remarried, however, he named his new wife as beneficiary. Upon his death, his daughter sued and sought to impose a constructive trust upon the insurance benefits. The Seventh Circuit rejected her attempt:

> In this case Alexandria [the daughter] seeks to invoke the Illinois state law doctrine of constructive trusts to prevent the named beneficiary, Peggy, from receiving the proceeds of Richard's ERISA-regulated group term life insurance and to apply Illinois state family law to recognize her as beneficiary of Richard's insurance policy. . . . . Though Alexandria emphasizes that a presumption against preemption exists in the area of state family law, we do not hesitate to find that presumption rebutted where, as here, Congress has made its preemption intention clear in the language of the statute, the Supreme Court has affirmed that intent, and we have applied the rule in similar cases. We therefore hold that ERISA preempts Illinois state law with respect to determining the rightful beneficiary of Richard's ERISA-regulated group term life insurance policy. Since Richard's ERISA-regulated employee benefits plan determines beneficiary status according to the person(s) named in the plan documents, we also find that Peggy is the proper beneficiary of the insurance policy.

*Id.* at 945.

*Melton* involves the exact same factual scenario that we have here, and accordingly it is controlling. State law governing constructive trusts cannot be used to circumvent the terms of an insurance policy governed by ERISA. It could be argued that imposing a constructive trust would not disturb ERISA because the terms of the ERISA-governed plan will be fulfilled. Imposing a constructive trust does not mean that the named beneficiary will be ignored, it means that when the benefits are "paid" to that individual, they will be immediately subject to the constructive trust in favor of the children. That this is a legal fiction is undeniable, but if the law is good at anything, it is fictions. This line of argument has been rejected by courts, however.

> ERISA can preempt state law even after benefits have been disbursed to beneficiaries. . . . Therefore a state court cannot achieve through a constructive trust on the proceeds of a pension plan what this court maintains it cannot achieve through a QDRO. Any alternative rule would allow for an end-run around ERISA's rules and Congress's policy objective of providing for certain beneficiaries, thereby greatly weakening, if not entirely abrogating, ERISA's broad preemption provision.

*Carmona v. Carmona,* 603 F.3d 1041, 1061 (9th Cir. 2010).

In other words, a constructive trust would violate ERISA's preemptive force even if it applied after the funds from the policy were actually distributed. After *Melton,* it is clear that the constructive trust argument would not find success in this circuit.

Sarah Kalmon also suggests that the divorce agreement might operate as a qualified domestic relations order ("QDRO"), which would be exempt from ERISA's preemptive reach. The definition of a QDRO is set forth in 29 U.S.C. § 1056(d)(3):

> (B)(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which-(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and (II) is made pursuant to a State domestic relations law (including a community property law).
>
> (C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies-(i) the name and the last known mailing address (if any)

of the participant and the name and mailing address of each alternate payee covered by the order, (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (iii) the number of payments or period to which such order applies, and (iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3).

Sarah Kalmon relies on *Metropolitan Life Ins. Co. v. Wheaton,* in which the Seventh Circuit found that a divorce decree qualified as a QDRO despite its failure to comply with § 1056(d)(3), *supra*. 42 F.3d 1080, 1084 (C.A.7 1994). There, the decree contained a provision similar to the one at issue here. It failed to identify the beneficiaries by name or identify the plan with any specificity; nor did it identify how the payments were to be made. Even though the decree failed a number of § 1056(d)(3)'s requirements, the Seventh Circuit found it was specific enough to constitute a QDRO.

Here, it is clear that the marital settlement agreement was *not* a QDRO.[1] The text of the agreement provides that, "Both parties shall maintain in full force and pay the premiums on all life insurance presently in existence on their lives naming the minor children as sole and irrevocable beneficiary [sic] until the parties [sic] youngest minor child reaches the age of majority . . ." (Sarah Kalmon Aff., Ex. B.) At the time of the divorce, the only insurance in existence was a policy issued by Unum to Sarah Kalmon. It insured her for $90,000 and Kelly for $40,000. (Sarah Kalmon Aff., Ex. D.) Thus, Kelly himself would not have been able to "maintain" the same insurance (because the only insurance then in existence was through his ex-wife's policy), and by its terms the agreement merely requires the parties to maintain policies "presently in existence." The ReliaStar policy at issue here was not then in existence.

---

[1] Although the agreement was not itself a "judgment, decree, or order," it was incorporated into the judgment of divorce.

Thus, at most the settlement agreement is a general agreement to maintain life insurance then in existence. It does not refer to a specific insurance policy, identify the beneficiaries by name (much less by address), or the amount of benefits to be paid to each beneficiary. Although under *Wheaton* some of these faults can be overlooked, it cannot be overlooked that there is not a specific policy named in the agreement. In *Wheaton* the policy was not named in the agreement, but the agreement required Mr. Wheaton to maintain "the life insurance which is presently carried through his/her employer." 42 F.3d 1081. The Seventh Circuit concluded that it was clear which policy the agreement meant because "any life insurance provided under an employer's policy at the time of the stipulation is covered." *Id.* at 1084. Similarly, in *Metropolitan Life Ins. Co. v. Bigelow,* the Second Circuit found a QDRO when the marital agreement identified "a General Electric insurance plan which consists of group life insurance, disability death and insurance for the dependant children." 283 F.3d 436, 444 (2d Cir. 2002). *See also Metropolitan Life Ins. Co. v. Williams,* 82 F. Supp.2d 1346, 1350 (M.D. Fla. 1999) (settlement agreement deemed a QDRO because it specified a MetLife policy). But here, where no policy is specified and none is even in *existence* at the time of the divorce, the agreement is hopelessly vague, as no one reading the agreement would have any idea which plan it applied to.

Sarah Kalmon argues that this case is like the cases just cited because the parties' financial statement was made a part of the judgment of divorce, and the financial statement identified the $40,000 policy she owned through Unum Life Insurance. But that is not the policy at issue here. Because Kelly Kalmon had no ability to continue the same Unum policy (recall that it was Sarah's policy offered through her employer), the fact that the Unum policy is identified is of no moment. In fact, its identification would actually confuse matters because the children are now seeking to enforce a wholly different policy issued by ReliaStar. That is, not only does the settlement

agreement fail to cite a specific plan, it incorporates a reference to a plan that the deceased never owned. In sum, unlike the cases cited above where the insurance policy could be divined by external factors, no one viewing the settlement agreement would be able to conclude that it applied to the ReliaStar insurance policy at issue here, principally because that policy was not even in existence yet and neither was its existence anticipated by the agreement.

In sum, the settlement agreement contains almost none of the requirements of a QDRO, and even the flexible approach taken in *Wheaton* will not save it. Sarah Kalmon states that she and Kelly handled their divorce *pro se*, and it is thus likely that the insurance clause in their settlement agreement was boilerplate gleaned from somewhere else. Since only Sarah owned an insurance policy at the time, the insurance clause did not make sense as written, as Kelly Kalmon did not have the ability to "maintain" any existing policies. Ideally, Kelly would have purchased his own insurance and the parties could have identified it in a QDRO.[2] Instead, however, we are left with a boilerplate provision that meets none of the requirements for a QDRO.

> If we were to hold that ERISA did not preempt run-of-the-mill domestic relations agreements, which were not barred by the anti-alienation provision, then we effectively would read the preemption provision exception, § 1144(b)(7), and the referenced QDRO provision, § 1056(d)(3), out of existence, thus violating a fundamental precept of statutory interpretation. . . . We believe Congress made itself clear on this point--unless a domestic relations settlement complies with the QDRO requirements, ERISA preempts its enforcement through a state law mechanism such as a constructive trust.

*Metropolitan Life Ins. Co. v. Pettit,* 164 F.3d 857, 865 (4th Cir. 1998).

---

[2]Sarah Kalmon has filed an affidavit in which she states that insurance for her children was important to her and she and Kelly both understood that he would need to purchase his own life insurance policy. Jan Keddell has filed a motion to strike on the grounds that such testimony is barred by the Dead Man's Statute. I do not consider the testimony material to the outcome here, and so I will deny the motion as moot. I also note that by most measures $40,000 is a grossly underfunded life insurance policy for an individual with dependent children. (17 times annual salary is one rule of thumb.) It is thus likely that the parties, who were fairly young, simply never considered life insurance at the time, which is quite common.

In conclusion, the motion for summary judgment is **DENIED** and the motion to strike is **DENIED** as moot.  Because there are no further issues to decide, judgment may be entered declaring that Jan Keddell is entitled to receive the entire benefit owed under the ReliaStar life insurance policy.  Judgment will be stayed for thirty days from the date of entry, however, to protect the right of the children to appeal.  In the event a notice of appeal is timely filed, the stay will continue until the appeal is resolved.

**SO ORDERED** this   11th   day of January, 2011.

                                                             s/ William C. Griesbach
                                                             William C. Griesbach
                                                             United States District Judge